IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY,<br><br>Plaintiff<br><br>v.<br><br>1735 W. DIVERSEY, LLC, RONALD B. SHIPKA, SR., RONALD B. SHIPKA, JR., JOHN SHIPKA, AND THE BOARD OF DIRECTORS OF REGAL LOFTS CONDOMINIUM ASSOCIATION,<br><br>Defendants. | No. 10 C 425<br><br>The Honorable William J. Hibbler |

MEMORANDUM OPINION AND ORDER

Nautilus Insurance Company seeks a declaratory judgment stating that it has no duty to defend or indemnify 1735 W. Diversey, LLC, Ronald Shipka, Sr., Ronald Shipka, Jr., or John Shipka (collectively, the Insureds), in connection with claims brought by the Board of Directors of Regal Lofts Condominium Association (the Board). The Insureds move for summary judgment.

I. Factual Background

In January 2000, 1735 W. Diversey, LLC (the LLC) announced its intention to convert a vacant building located at 1735 W. Diversey in Chicago, Illinois, into condominiums. The LLC had completely renovated the 5-story building, including installing new mechanical, electrical and plumbing in the interior, converting the interior into numerous condominium units, installing new roof coverings and windows on the exterior of the building, and tuck pointing the exterior surfaces of the building. In connection with the renovation project, the Insureds purchased two Commercial

Lines Policies that covered the periods from June 1998 through June 1999 and June 1999 through June 2000. After the renovation, the individual condominium units were sold and the Regal Lofts Condominium Association was organized to govern the common areas of the building.

As early as November 2000, one of the owners of the individual condominium units complained that water had been leaking into his unit for at least two months whenever it rained. By 2005, the Board hired Construction Resources, Incorporated (CRI) to investigate the cause of "on-going water leakage at select areas of the existing exterior brick masonry walls at units 303 and 407." CRI noted water infiltration through the exterior brick masonry walls, build-up of efflorescence on the interior surfaces of the masonry, and periodic spalling of portions of the brick masonry. CRI inspected the property and concluded that primary cause of water infiltration was the deteriorated conditions of the exterior brick masonry walls, localized opening and failures in the facade sealant joints, and the lack of window/door flashing systems. It further concluded that the deteriorated conditions of the exterior brick masonry walls resulted from prolonged and repeated water penetration/absorption into the brick walls combined with cyclic freeze-thaw action. Finally, CRI concluded that, although the deteriorated conditions developed over many years prior to the condominium conversion, water penetration "currently occurs because the walls have not been adequately restored to a reasonably water-tight and serviceable condition."

In January 2008, the Board filed a six-count complaint on behalf of the condominium home owners against the Insureds. The Board amended its complaint in June 2008 and again in August 2009, each of which added a count for negligence against the LLC. Each complaint alleged that the Insureds "failed to properly construct, develop, tuckpoint or repair the common areas including the exterior walls . . . [such that] they suffer substantial structural defects and need to be rebuilt or

repaired" and that the "building has been experiencing extensive water infiltration." The Board's second amended complaint further alleged that the negligence of the Insured also caused damages to the interior of the building and personal property within the building. Each of the underlying complaints included CRI's report summarizing its investigation of the water infiltration problem.

Shortly after the Board filed its first complaint, the Insureds tendered the mater to Nautilus and requested that it indemnify and defend them from the Board's underlying claims. Nautilus, however, rejected the Insureds' tender and denied coverage under both insurance policies. The Insureds tendered the first amended complaint to Nautilus, but Nautilus again rejected the Insureds' tender and denied coverage. After the Insureds tendered the second amended complaint to Nautilus, which had added more detail concerning the Insureds' alleged negligence, Nautilus filed this declaratory judgment action.

The Nautilus insurance policies apply to bodily injuries and property damage that are caused by an "occurrence." The policies define an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policies contain three potentially relevant exclusions. First, the policies' j-5 exclusions excludes property damage to "that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations." Similarly, the j-6 exclusion excludes property damage to "that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it." Finally, the "Products-Completed Operations Hazard" exclusion excludes property damage occurring away from premises that the insured owns or rents and arising out of its product or work, unless the products are in the insureds' physical possession or if the work has yet to be completed.

The policies deem the insureds' work to be completed at the earliest of the following times: (1) when all of the work called for in the insureds' contract has been completed; (2) when all of the work to be done at the site has been completed if the insureds' contract calls for work at more than one site; or (3) when that part of the work done at the job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

## II. Standard of Review

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct., 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of demonstrating there is no genuine issue of material fact, and judgment as a matter of law should be granted in its favor. Fed. R. Civ. P. 56(c). Once the moving party has met the initial burden, the nonmoving party must then "go beyond the pleadings" and "designate specific facts showing that there is a genuine [material] issue for trial."*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party must offer more than a mere scintilla of evidence to survive summary judgment, and conclusory allegations are insufficient to defeat a motion for summary judgment. *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir.2006); *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*,, 424 F.3d 659, 667 (7th Cir.2005). During the Court's review, it must view all evidence and inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Because there are no disputed facts, the Courts review is limited to the interpretation

of the underlying complaint and the insurance policy, which are questions of law. *Pekin Ins. Co. v. Miller*, 367 Ill. App. 3d 263, 265, 854 N.E.2d 693 (2006).

III. Analysis

To determine whether an insurer has a duty to defend its insured, a court compares the factual allegations of the underlying complaint to the language of the insurance policy. *American States Ins. Co. v. Koloms*, 177 Ill.2d 473, 479, 687 N.E.2d 72 (1997). In addition, a court may consider "'true but unpleaded facts'" in conjunction with the allegations of the underlying complaint. *Monticello Ins. Co. v. Wil-Freds Constr., Inc.*, 277 Ill. App. 3d 697, 701-02, 661 N.E.2d 451 (1996) (quoting *Assoc. Indemnity Co. v. Ins. Co. of N. Am.*, 68 Ill. App. 3d 807, 816, 386 N.E.2d 529 (1979)). If the facts of the underlying complaint (and any true but unpleaded facts) fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises. *Koloms*, 177 Ill.2d at 479. An insurer may not refuse to defend an action against the insured unless it is clear from the face of the underlying complaint that the allegations fail to state facts that bring the case within or potentially within the policy's coverage. *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill.2d 64, 73, 578 N.E.2d 926 (1991). Accordingly, courts liberally construe the underlying complaint and the insurance policy, resolving ambiguities in favor of the insured. *Wilkin Insulation Co.*, 144 Ill.2d at 74. Moreover, where the underlying complaint alleges several theories of recovery against the insured, the duty to defend arises if only one such theory is within the potential coverage of the policy. *Id.* at 73.

Nautilus's duty to defend turns on whether the underlying complaint alleges "property damage" that was caused by an "occurrence." If it does, Nautilus's duty to defend will be triggered unless a particular policy exclusion eliminated coverage. The Nautilus policies defines an "occurrence" as an accident. While the policies provide an example that helps shape the

understanding of an accident, illustrating that accidents include "continuous or repeated exposure to substantially the same general harmful conditions," it does not define the term.

Illinois courts construing insurance policies have defined "accident" as "an unforeseen occurrence, usually of untoward or disastrous character or an undesigned, sudden, or unexpected event of an inflictive or unfortunate character." *Westfield Nat'l Ins. Co. v. Cont'l Cmty. Bank & Trust Co.*, 346 Ill. App. 3d 113, 117, 804 N.E.2d 601 (2003). The natural and ordinary consequences of an act, however, do not constitute an accident. *Wil-Freds Constr., Inc.*, 277 Ill. App. 3d at 703. Consequently, Illinois courts have consistently concluded that damage to a construction project resulting from construction defects is not an "accident." *See, e.g., Stoneridge Dev. Co. v. Essex Ins. Co.*, 382 Ill. App. 3d 731, 753-54, 888 N.E.2d 633 (2008); *Viking Constr. Mgmt., Inc. v. Liberty Mut. Ins. Co.*, 358 Ill. App. 3d 34, 42, 831 N.E.2d 1 (2005); *State Farm Fire & Cas. Co. v. Tillerson*, 334 Ill. App. 3d 404, 409, 777 N.E.2d 986 (2002); *Wil-Freds Constr. Inc.*, 277 Ill. App. 3d at 704-05; *Indiana Ins. Co. v. Hydra Corp.*, 245 Ill. App. 3d 926, 930-31, 615 N.E.2d 70 (1993); *Bituminous Cas. Corp. v. Gust K. Newberg Constr. Co.*, 218 Ill. App. 3d 956, 578 N.E.2d 1003 (1991).

For example, in *Wil-Freds Constr., Inc.*, the City of Naperville sued a contractor, alleging various construction defects in a municipal garage, including cracks in the walls, water leaks in the garage, water damage to the building, and defective doors. *Wil-Freds Constr., Inc.*, 277 Ill. App. 3d at 699. The court noted that the underlying complaint alleged damage only to the construction project itself and thus did not constitute an occurrence. *Id.* at 705. In concluding that damages caused by construction defects are not accidents, Illinois courts reason that the damages are the natural and ordinary consequences of the defective workmanship therefore cannot be an unforeseen, sudden, or unexpected occurrence. *Viking Constr. Mgmt., Inc.*, 358 Ill. App. 3d at 42. Further, to

treat faulty workmanship as an "accident" would transform an insurance policy into performance bond, which would be unjust to the insurer. *Wil-Freds Constr., Inc.*, 277 Ill. App. 3d at 709. Illinois courts thus conclude that an "occurrence" does not include "'accident[s] of faulty workmanship, but rather faulty workmanship, which causes accident[s].'" *Wil-Freds Constr., Inc.*, at 705 (quoting *Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788, 796 (N.J. 1979)).

Therefore, in order for a construction defect to be classified as an "occurrence," it must damage something other than the project itself. *Pekin Ins. Co. v. Richard Marker Assoc., Inc.*, 289 Ill. App. 3d 819, 823, 661 N.E.2d 451 (1997); *Wil-Freds Constr., Inc.*, 277 Ill. App. 3d at 705. For example, in *Wil-Freds Constr.*, if the alleged construction defects had caused water damage to cars parked in the garage or an injury to a pedestrian caused by falling concrete, the court observed the claims would have constituted an occurrence. *Wil-Freds Constr., Inc.*, 277 Ill. App. 3d at 705. Similarly, faulty workmanship that causes constant dripping and condensation that damages furniture and other personal property does amount to an occurrence. *Richard Marker Assoc., Inc.*, 289 Ill. App. 3d at 823. Mistakes in fact can also form the basis of an accident. In *Pekin Ins. Co. v. Miller*, 367 Ill. App. 3d 263, 266, 854 N.E.2d 693 (2006), the underlying complaint alleged the negligent removal of trees. Although the contractor had been hired to remove trees, it removed trees on the wrong property, and thus the "accident" damaged something other than the property itself. *Id.* In this way, the "accident" was not in the removal of the trees themselves — for the contractor did in fact intend to remove the trees — but in the mistake concerning the property on which the work was to be done. *Id.*[1]

---

[1] In a similar case, one Illinois court has found that negligently operated heavy machinery at the worksite, causing damage to the project itself does constitute an occurrence. *Country Mut. Ins. Co. v. Carr*, 372 Ill. App. 3d 335, 342, 867 N.E.2d 1157 (2007). Although the court does

The Insureds argue that the underlying complaints allege an accident caused by faulty workmanship like those in *Richard Marker Assoc.* and *Miller*. The Insureds reason that their negligent workmanship damaged parts of the building that they did not work upon (the interior surfaces of the masonry and interiors walls of the units) and thus is not damage to the project itself. They further suggest that although the underlying complaints allege that they failed to discover and repair structural defects in the property they do not allege that they intended that negligence to cause damage to the property. Put another way, the Insureds admit that the policies would not cover the alleged failure to discover and repair the structural defects in the property, but it would cover the resulting damage to the interior of the units. Moreover, the Insureds suggest that the underlying complaints do not allege that they "intended" their construction of the Regal Lofts condominiums to result in property damage to the interior of the units. In making this argument, the Insureds rely primarily on *Wilkin Insulation Co.* and *Carr*, which suggest that the insured must expect or intend the damage to be caused by the faulty workmanship.

At the outset, the Court discounts the Insured Defendants reliance on *Wilkin Insulation Co.*, 144 Ill.2d 64, 77, 578 N.E.2d 926 (1991). *Wilkin Insulation Co.* concerned a failure to discover asbestos, which resulted in the incorporation of defective components into the building. Even though the failure to discover the asbestos was a form of negligent workmanship that damaged the structure itself, the court held that incident was an occurrence. *Wilkin Insulation Co.*, 144 Ill. 2d at

---

note that "the natural and ordinary consequences of an act" cannot constitute an accident, it goes on to conclude, with little explanation, that if the person did not intend the result, the result is the product of an accident. *Id.* These two conclusions are in obvious tension — for a negligent actor does not necessarily intend the result, but that result may very will be the natural and ordinary consequence of an act. As a result, it is not surprising that other Illinois courts have criticized *Carr*. *See Stoneridge Dev. Co.*, 382 Ill. App. 3d 750-51.

77. The Supreme Court of Illinois, however, has limited the holding and rationale of *Wilkin Insulation Co.* to the unique situation of incorporating asbestos into a larger structure. *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 197 Ill.2d 278, 306, 757 N.E2d 481 (2001). *Wilkin Insulation Co.* thus is not applicable here.

Nor does *Carr* offer any solace for the Insureds. As noted earlier, *Carr* has been criticized as an outlier and the weight of authority in Illinois is squarely against it. *Carr* is also distinguishable. In *Carr*, the "occurrence" was not the result of faulty workmanship related to the project, but rather negligent operation of machinery at the worksite that caused damage to the project. *Carr*, 372 Ill. App. 3d at 341-42.

In this case, the underlying original and amended complaints allege damage only to the building itself — whether in the form of cracks to the exterior masonry or efflorescence and spalling in the interior walls. It is the Regal Lofts Condominiums themselves that are damaged, not something within and separate from the condominiums. In this sense, the facts as pleaded in the underlying original and amended complaints brings this case squarely in line with *Wil-Freds Constr.* In *Wil-Freds Constr.*, the faulty workmanship caused damage that was not confined to one particular part of the construction project but which instead spread throughout the project. *Wil-Freds Constr., Inc.*, 277 Ill. App. 3d at 699. Nevertheless, because the damage affected only the project itself, the court made clear that damage to the structure being worked that is caused by negligent workmanship is not an "occurrence." *Wil-Freds Constr. Inc.*, 277 Ill. App. 3d at 705; *see also Viking Constr. Mgmt., Inc.*, 358 Ill. App. 3d at 42.

Thus it does not matter that the Insureds suggest, wrongly[2], that they did not work on the parts of the property that were damaged. The failure to adequately detect and repair the structural defects in the property damaged the building itself, and under Illinois law, damage to the structure itself — regardless of whether the Insureds worked on that particular part of the structure — cannot be an accident. *Viking Constr. Mgmt., Inc.*, 358 Ill. App. 3d at 53-54 (holding that even if the underlying plaintiff had alleged damages to parts of the building other than those worked upon by the insured, Illinois law requires that there must be damage to something other than the structure for coverage to exist).

Further, the mere fact that the underlying complaints do not specifically allege that the Insured Defendants intended to damage the Regal Lofts condominiums is of no consequence. *Wil-Freds Constr. Inc.* holds that damage to a property caused by negligent workmanship is the natural and ordinary consequence of that natural workmanship, and the underlying complaint need not specifically allege that such damage was intended. *Wil-Freds Constr., Inc.*, 277 Ill. App. 3d at 703-04.

The allegations of the underlying complaint and amended complaint indicate that all of the damage to the Regal Lofts Condominiums was caused by the Insureds' failure to properly repair the exterior masonry of the building. The Court holds that the underlying complaint and the underlying amended complaint allege that faulty workmanship caused damage to the structure that the Insureds worked upon, which under Illinois law interpreting substantially the same language, is not sufficient to give rise to an "occurrence." Thus, the underlying complaint and amended complaint do not state

---

[2] The undisputed facts reveal that they undertook a gut-rehab of the entire building.

facts that bring the claims within or potentially within the policies' coverage and the Insureds are not entitled to summary judgment.

The Insureds next point out that the underlying second amended complaint alleges that negligent workmanship caused damages to personal property. On the surface, this allegation appears to bring the underlying second amended complaint within or potentially within the scope of the policies' coverage. Like the underlying complaint in *Richard Marker Assoc., Inc.*, 289 Ill. App. 3d at 823, the underlying second amended complaint thus alleges damages to property other than the project itself. Nautilus in fact concedes that the underlying second amended complaint alleges an occurrence because it alleges that faulty workmanship that causes an accident. Nautilus argues instead that either exclusion j-6 or the "Products-Completed Operations Hazard" exclusion that precludes coverage. When an exclusionary clause is relied upon to deny coverage, its applicability must be clear and free from doubt. *Trovillion v. U.S. Fid. & Guar. Co.*, 130 Ill. App. 3d 694, 699, 474 N.E.2d 953 (1985).

The allegations of the second underlying complaint make clear that the Products-Completed Operations Hazard applies. The Products-Complete Operations Hazard excludes property damage away from premises that the Insureds own and deems work to have been completed when the part of the job site is put to its intended use. Among other things, the second amended complaint alleges that the Insureds sold individual condominium units to the homeowners represented by the underlying plaintiff. The first allegations of damages were made by one of the *owners* of the individual condominium units. It further alleges that the Insured Defendants "assured the unit owners that the common elements were in good and effective working order and had no defective conditions." Clearly, then, the property damage occurred away from premises owned by the

Insureds. The property damage also occurred after the work was completed. If the owners of the individual condominium units had indeed moved personal property into the units (as the second amended complaint alleges), then the owners were putting the property to its intended use, which makes the Insureds work "completed" under the terms of the policies. Further, the underlying plaintiff hired CRI to investigate the defective conditions in 2005 — nearly five years after the work on the condominiums was completed. Thus, the underlying second amended complaint makes clear that any damage to personal property occurred both after the work on the project was completed and after the Insureds had transferred ownership to the individual condominium unit owners. Therefore, the Products-Completed Operations Hazard exclusion clearly applies to bar coverage and the Insureds.

The Court concludes that underlying complaints fail to set forth facts that bring the claims within or potentially within the policies and therefore DENIES the Insureds Motion for Partial Summary Judgment.

IT IS SO ORDERED.

7/21/11
Dated

Wm J. Hibbler
Hon. William J. Hibbler
U.S. District Court